## B. B. WADDELL v. LATHAM, ALEXANDER & CO.

1. VENDOR AND VENDEE. *Defect of title. Suit for price. Burden of proof.*

  Where a contract for the sale of land has been executed and the vendee put in possession, although he has not been evicted, a court of equity will not compel him to pay the price, if the title be invalid and the vendor be insolvent. But the vendee must clearly show the defect of title, and that, if sued, he cannot maintain his possession.

2. SAME. *Character of contract. Estoppel. Burden of proof.*

  Where one, purposing to buy land, procures the owner to deliver him a deed, absolute in form and reciting payment, but in fact conditioned that he negotiate a loan thereon to pay the price, until which time the deed is not to be considered delivered, but the purchaser, failing to procure the loan, refuses to restore the *status quo*, puts the deed on record, and occupies the land, and, when sued for the price, answers under oath that the delivery of the deed was unconditional, he is estopped afterwards to assert that the sale was executory, so as to devolve on complainant the burden of showing a perfect title. By reason of such conduct, the vendor may treat the deed as delivered, and the burden is on the purchaser to show a failure of title.

3. SAME. *Invalidity of title not shown. Possession. Relief.*

  In such case, where the vendee in possession, being sued for the price, fails to establish the invalidity of the title of the grantor, at most showing only a title imperfect in written muniments, but supported by possession, sufficient in time, and probably in character, to cure all defects, complainant is entitled to a decree.

FROM the chancery court of the first district of Coahoma county.

HON. W. R. TRIGG, Chancellor.

The original bill in this case was filed by Thomas H. Allen against B. B. Waddell to enforce a lien for the price of certain land. Prior to the sale, the land was, and had been for many years, in the possession of Allen, who was the senior member of the commission firm of Thomas H. Allen & Co.,

of Memphis, Tenn., and he cultivated the land by tenants, whom he supplied through his firm. Waddell was then in his employ as a traveling agent, charged, among other duties, with the oversight of this plantation. In 1886 Allen, having found his planting operations unsuccessful, entered into negotiations with Waddell to sell the latter the land for four thousand dollars on credit. These negotiations culminated in an agreement, in accordance with which Waddell executed to Allen a note for four thousand dollars, payable five years after date, with six per cent. interest, payable annually, and Allen prepared a warranty deed to Waddell, reciting a cash consideration of four thousand dollars as being already paid. The reason for this recital was that it was intended that Waddell should negotiate a loan on the plantation, and it was desired that the deed show no incumbrance for the purchase-money. The evidence also tended to show that the deed was not intended to be delivered or recorded until Waddell should succeed in obtaining the loan out of which he was to pay the agreed price. Waddell took possession, and immediately began cultivating and improving the place, and obtained advances of money and supplies from Allen, upon an agreement to ship the firm of Thomas H. Allen & Co. the crops to be raised. Meantime, he procured the deed to be delivered to him by Allen, for the purpose of examining the title of the land, and, during the course of this examination, it was found that the records showed no title in Allen to a part of the land; that, in fact, Allen had no written muniments of title, and nothing to support his claim of title except occupancy. There was some evidence tending to show that this occupancy had been notorious and adverse for more than ten years. The effort to borrow money on the place was thus thwarted, and some time afterward Thomas H. Allen, as well as the firm of Thomas H. Allen & Co., became hopelessly insolvent, and made an assignment of all their assets for the benefit of creditors. Waddell, learning of this, immediately put the deed on record, as he claims, for the

purpose of protecting his rights in the plantation, since the insolvency of Allen had rendered his warranty worthless.

On November 5, 1890, Allen filed this bill against Waddell, reciting the circumstances above stated as to the conditional delivery of the deed, and praying for a foreclosure of the lien for the purchase-money with interest. Waddell answered, admitting his purchase, but denying that the delivery of the deed was conditional, and asserting that it was absolute. The answer further denied liability for the purchase-money, because of the alleged defective title and Allen's insolvency.

Defendant made his answer a cross-bill against Allen, and prayed that, in view of the facts above set out, Allen be required to make and tender a deed conveying a perfect title to the land before any decree should be rendered for the purchase-money. The answer of Allen to the cross-bill admitted that he did not have a paper-title to a part of the land, but, as to this, defendant claimed that he had been in undisturbed possession for more than ten years, and that Waddell, at the time of his purchase, was acquainted with the state of the title.

After the case had been submitted for final hearing, Latham, Alexander & Co. were permitted to file an amended and supplemental bill showing that the note given by Waddell in purchase of the land had been assigned to them by Allen, and they were permitted to be substituted as complainants. This supplemental bill was answered by Waddell, and the cause proceeded to a final hearing, and resulted in a decree in favor of Latham, Alexander & Co. subjecting the land to be sold to satisfy the note in their hands, and from this decree Waddell appeals.

*St. John Waddell*, for appellant.

In an action on a note given for land for which the vendee was to receive a deed upon payment of the purchase-money, the vendee may show, in bar of the action, a want of title in the vendor. *Ray* v. *Woolfolk*, 1 Smed. & M., 523; *Brewer* v.

*Harris,* 2 *Ib.,* 84; *Kilpatrick* v. *Dye,* 4 *Ib.,* 289; *Peques* v. *Mosely,* 7 *Ib.,* 340; *Wiggins* v. *McGimpsey,* 13 *Ib.,* 532. In such case the purchaser has an election either to rescind the contract or to compel the conveyance of such estate as the vendor has, and to make compensation for the residue. *Mathews* v. *Patterson,* 2 How., 729; *Wilson* v. *Cox,* 50 Miss., 133; 10 Vesey, 315; 3 Leigh, 161. Where the covenant of title affords no indemnity by reason of the insolvency of the vendor, equity will relieve a purchaser in possession under warranty deed from payment of the purchase-money, in the absence of fraud, on the ground that the title is defective. *Allen* v. *Bratton,* 47 Miss., 119; *Wofford* v. *Ashcraft, Ib.,* 641. And this is true whether there has been eviction or not, or whether the vendee knew, when he purchased, of the defective title or not. *Kilpatrick* v. *Dye, supra; McDonald* v. *Green,* 9 Smed. & M., 138; *Johnson* v. *Jones,* 13 *Ib.,* 580; *Wailes* v. *Cooper,* 24 Miss., 208; *Gartman* v. *Jones, Ib.,* 234; *Miller* v. *Lamar,* 43 *Ib.,* 383; Pomeroy on Sp. Perf. Con., §§ 198, 201, 351.

*D. A. Scott,* for appellees.

Had a purchaser intended to make the defense of a failure of title, he should have promptly offered to rescind and reconvey the property to complainant when the defect was discovered. To permit him to do so now, would be inequitable. By his sworn answer and cross-bill he denied that the deed was conditional, and he cannot obtain relief inconsistent with them. 67 Miss., 173; Story's Eq. Pl., 36. Surely the defendant will not be permitted to remain in possession, and at the same time refuse to pay the purchase-money. Waddell knew, when he purchased, the state of the title, and as there is no fraud or misrepresentation in the sale, the mere defect or cloud on the title will not relieve him from payment of the purchase-money. So long as there had been no eviction, the purchaser must be remitted to his action on his covenants of warranty. The purchaser must show clearly such a defect

of title as amounts to an eviction, such an outstanding title as could certainly be successfully asserted. *Guice* v. *Sillers*, 43 Miss., 52; *Miller* v. *Lamar, Ib.*, 383.

A purchaser cannot rescind a contract of sale except by putting the seller in *statu quo. Ware* v. *Houghton*, 41 Miss., 370. Waddell cannot now be heard to say that the sale was void. He must be deemed to have waived any rights which he might have had by reason of the alleged failure of title. *Harris* v. *Bolton*, 7 How., 167; *Bird* v. *McLaurin*, 4 Smed. & M., 50; *Natchez* v. *Minor*, 9 *Ib.*, 544; *Johnson* v. *Jones*, 13 *Ib.*, 580; *Brown* v. *Norman*, 65 Miss., 369.

COOPER, J., delivered the opinion of the court.

It is far too late for the appellant to set up the claim that he is a purchaser of the lands under an executory and not an executed contract. Doubtless that was the attitude it was intended for him to occupy, and when the deed was intrusted to him it was not intended to be delivered by the grantor. But the appellant put it to record; refused to restore the *status quo*, upon the ground that to do so would be an admission that the grantor had justly lost confidence in him; occupied and leased the land for many years, and, finally, by his sworn answer and cross-bill, unequivocally asserted that the delivery of the deed was absolute and unconditional. Though what was done was not intended by the grantor as a delivery of the deed, he had the right to treat it as a delivery, by reason of the conduct of appellant, and to exhibit his bill to foreclose the lien for the purchase-price. It suits the appellant now to occupy the inconsistent attitude of a purchaser under an executory contract, for the reason that, if he can occupy this relation, it will devolve upon complainant the burden of proving that he has a good title to the lands sold before he can call on appellant to consummate the contract and pay the purchase-price. But, since appellant cannot now be treated otherwise than as a vendee in the undisturbed and undisputed possession of the

land, it devolves on him to show clearly the defect of title relied on by him. The grantor being confessedly insolvent, a court of equity will refuse to compel the grantee to pay the purchase-price, although he has not been evicted, if it is made to appear that the title is invalid. *Johnson* v. *Jones,* 13 Smed. & M., 580; *Kilpatrick* v. *Dye,* 4 *Ib.,* 289; *McDonald* v. *Green,* 9 *Ib.,* 138; *Wailes* v. *Cooper,* 24 Miss., 208; *Gartman* v. *Jones, Ib.,* 234; *Miller* v. *Lamar,* 43 *Ib.,* 383. But the defendant must clearly show the defect of title, and that if sued he cannot maintain his possession. *Moss* v. *Davidson,* 1 Smed. & M., 112; *Ayers* v. *Mitchell,* 3 *Ib.,* 683; *McDonald* v. *Green,* 9 *Ib.,* 138; *Green* v. *McDonald,* 13 *Ib.,* 445. The appellant failed to show the invalidity of the title of the grantor. At most, he has shown a title imperfect in written muniments, but supported by possession certainly sufficient in time, and probably in character, to cure all defects.

Counsel is mistaken in stating that the pleadings admit that by accident a part of the land intended to be conveyed was omitted from the deed, and that, without directing a correction of this error, the court has decreed a sale not only of the land described in the deed, but of that omitted.

The final decree directs the grantor to convey this land within twenty days from the date of the decree, and, in default thereof, that the clerk of the court, acting as commissioner, shall make the conveyance.

We find no error in the decree, and it is

*Affirmed.*