70 So.2d 840 (1954)
CLEMENTS et al.
v.
LEONARD et al.
Supreme Court of Florida. Division A.
March 2, 1954.
Rehearing Denied March 22, 1954.
*841 Frank L. Butts, Miami, for petitioners.
William H. MacTye, Hall, Hedrick & Dekle and Walter S. Caldwell Rogers, Miami, for respondents.
SEBRING, Justice.
The petitioners have instituted this interlocutory certiorari proceeding to obtain a review of a certain order entered by the trial court after the rendition of a final decree.
The suit out of which the order arose was instituted in the Circuit Court for Dade County by William A. Leonard and Carolyn Leonard, as the owners of a residence property in Dade County, to require the defendants to perform a contract whereby the defendants had agreed to purchase the property from the plaintiffs for the sum of $13,900. In the complaint the plaintiffs averred that they had a good and marketable title to said property which they were ready, able and willing to convey to the defendants but that the defendants had refused to go through with the transaction and had demanded the return of the down payment made pursuant to the contract.
*842 The prayer of the complaint was that "upon final hearing this Court will determine the respective rights of the parties to the attached contract and will order and decree that the Defendants herein perform in full the attached contract with the Plaintiffs within a specific period of time set by this Court, and that this Court will set a reasonable attorney's fee for the services rendered in connection with this suit, all in accordance with the terms of the attached contract between the parties, and will grant such other and further relief as it shall deem necessary and proper under the circumstances."
The defendants filed their answers to the complaint setting up, as a defense to the suit, that they had refused to go through with the transaction because of the fact that the plaintiffs had been unable to convey good, marketable and insurable title, as they were obligated to do under the terms of the contract. With the answer they filed a counterclaim praying that the written contract which formed the basis for the suit be cancelled and they have a money decree against the plaintiffs for the $100 down payment made by them on the purchase price of the property and for expenses incurred in connection with the examination of the abstract of title.
After the answer and counterclaim were filed the plaintiffs filed a reply to the counterclaim and moved for a summary decree in their favor on the ground that no genuine issue as to any material fact was presented by the answer. The defendants also filed a motion for summary decree in their favor on the counterclaim, on the ground that no genuine issue as to any material fact was presented by the reply to the answer.
At the hearing on the motions the court entered a summary decree reciting therein that "it being established and agreed by and between the parties that there exists no genuine issue as to any material fact" it is adjudged that the motion of the plaintiffs for summary judgment is granted; that the defendants do fully and completely comply with the contract by paying the purchase price agreed and accepting a deed, and that upon their failure so to do the property be deeded by the plaintiffs to the defendants and thereafter sold at public sale to the highest and best bidder, and the proceeds applied to the plaintiffs' decree for the amount of the purchase price of the property.
In the decree the court retained jurisdiction of the cause to make further orders therein, "including the entry of an order confirming the sale * * * and for decreesing the execution of any portion of the purchase price * * * which is not satisfied by the aforementioned sale."
The defendants refused to pay the purchase price within the time fixed in the decree. Thereupon, the property was advertised for public sale; and the property was bid in by the plaintiff, William A. Leonard, for $8,000. Subsequently, the plaintiffs moved for the confirmation of the sale and for the entry of a money decree for the balance remaining due the plaintiffs after the application of the proceeds of the sale. The motion was granted, the sale was confirmed and a money decree for the remainder of the purchase price was entered in favor of the plaintiffs.
The defendants maintain in this certiorari proceeding that under settled Florida law no authority exists for the entry of such a money decree in a suit instituted for the specific performance of a contract to convey real property.
In Morgan v. Eaton, 59 Fla. 562, 52 So. 305, 306, it is held that "the remedy by specific performance is mutual as between vendor and vendee, and, where the remedy is sought by the vendor, it makes no difference that the relief he seeks thereby is only to enforce the payment of a specific sum of money." In conformance with this holding it was subsequently held, in Booth v. Bobbitt, 94 Fla. 704, 114 So. 513, that where the vendor seeks to require the vendee to specifically perform the contract by paying the balance due thereon, a prayer that, upon failure to do so, execution be issued against the defendant for *843 the amount of the balance found to be due is usually appropriate.
What is held in the foregoing cases appears to conform with the general rule on the subject. 49 Am.Jur., Specific Performance, section 94; Fry on Specific Performance (6th ed.), p. 33. Under this general rule, the seller, upon the breach by the buyer of his contract to purchase, has alternative remedies available to him: (1) He may retain the property and sue at law for the breach of the contract, recovering as damages the difference between the price the buyer agreed to pay for the property and the fair market value thereof as of the date of the breach. (2) He may sue in equity to require the buyer to perform the contract by accepting a deed to the property upon the payment of the purchase price, and for an accounting and a writ of execution against the leviable assets of the buyer, including the property involved, for the amount due, upon the failure of the buyer to comply with the terms and conditions of the final decree granting such relief to the seller. Annotation, 65 A.L.R. 7, at page 40. See also McCormick v. Bodeker, 119 Fla. 20, 160 So. 483; First Nat. Bank of St. Johnsbury v. Laperle, 117 Vt. 144, 86 A.2d 635, 30 A.L.R.2d 958; Welling v. Crosland, 129 S.C. 127, 123 S.E. 776.
It is clear from the record that the plaintiffs in the case at bar have resorted to the second remedy as a method for obtaining relief for the breach of the contract. We are of the opinion, therefore, that if the facts of the case are sufficient to support the final decree of specific performance that was entered by the trial court  a matter we do not decide because that issue is not before us for determination in this proceeding  the entry of the order by the trial court, for the balance of the purchase price remaining due and unpaid after the application of the proceeds derived from the public sale of the property, was proper.
In opposition to the entry of the order, the defendants rely on what was said in McCaskill v. Dekle, 88 Fla. 285, 102 So. 252, that "In a suit by the vendor for the specific performance of a contract to convey land, where, in accordance with the terms of the decree, the land is sold and the proceeds applied in part payment of the purchase price, no lien being involved, the entry of a deficiency decree for the balance is unauthorized."
So far as we have been able to ascertain from a study of the Florida decisions the ground relied on by the defendants to quash the money decree sought to be reviewed is supported only by McCaskill v. Dekle, supra. Subsequent references to the rule of that case have been by way of obiter dictum, and the premises of the McCaskill case have never been critically examined. See McCormick v. Bodeker, supra; Florida Nat. Bank v. Kassewitz, 156 Fla. 761, 25 So.2d 271.
The court in the McCaskill case first acknowledged that the settled practice in other jurisdictions, when no fraud is present and specific performance of a contract for the sale of land is decreed, is to permit recovery of the full balance due on the contract price without regard to the amount realized from a judicial sale of the land involved, should such sale be necessary. The opinion, however, also contains the statement that "whatever may be the procedure elsewhere, it is established here that there is no authority for entering deficiency decrees in other proceedings than in suits in equity to foreclose mortgages or other liens." In support of this conclusion there is cited Equity Rule 89, Circuit Court  a rule which provided for deficiency decrees in mortgage foreclosures  and the case of Johnson v. McKinnon, 54 Fla. 221, 45 So. 23, 26, 13 L.R.A., N.S., 874.
The Johnson case involved a proceeding for foreclosure of a vendor's lien, and referred to an earlier opinion in the same matter, Johnson v. McKinnon, 45 Fla. 388, 34 So. 272, wherein the remark was made, in passing, that "`we know of no authority for entering a deficiency decree in actions to enforce vendors' liens. As we understand it, the rule of procedure in giving *844 deficiency decrees does not belong to a court of equity, unless specifically conferred by statute or a rule of court.'" Cited in support of this passing remark was Webber v. Blanc, 39 Fla. 224, 22 So. 655, 656, but a mere glance at the Webber case will reveal that the ruling therein was simply that since a deficiency decree in a mortgage foreclosure suit is permitted only by statute or rule, it is not mandatory, and if no such decree is obtained in the foreclosure proceeding then a subsequent action at law will lie to collect the balance due under the note.
It is interesting to note that in the Webber case the true rule with regard to the collection of a balance due, after partial satisfaction of an obligation in an equitable proceeding, is quoted as follows:
"`A court of equity cannot, independent of any provision of statute giving the authority, decree the payment of the balance that may remain of the mortgage debt after applying the proceeds of the property mortgaged, unless the debt, without the mortgage, was such that a court of chancery would have jurisdiction of it and could enforce it. * * * Without the aid of statute, or circumstances giving equitable jurisdiction over the demand, the only proper remedy for the deficiency is by action at law upon the bond or note.'" (Emphasis supplied.)
From this quoted statement it is apparent that the rule limiting collection of "true deficiencies" in equity is applicable only to those cases where equitable jurisdiction has attached by reason of the existence of a mortgage or lien; and in our opinion the rule is a sound one, since in the absence of a statute or rule equitable jurisdiction should not be extended to allow satisfaction of a purely legal demand merely because there happens to exist an equitable remedy to enforce an "in rem" right or lien on collateral. When the basis for the exercise of equitable jurisdiction in the first place is simply the enforcement of a mortgage or lien against certain property, recovery should logically be limited to the amount realized by a sale of that property, unless the recovery of an in personam deficiency decree for the amount over and above the proceeds of such sale is permitted by statute or rule.
However, there is no logical basis for the application of the rule to the enforcement of a decree for the specific enforcement of a contract for the sale of land. In such a case the jurisdiction of a court of equity attaches without regard to the existence of a lien, and the fact that at final hearing a successful vendor may be given a lien on the property which, under the terms of the final decree, he has deeded to the vendee, is merely an incidental means of enforcing the right of the vendor to recover the amount found due by the decree; the jurisdiction of the equity court to execute its decree in full being independent of any "lien."
It should be noticed that in McCaskill v. Dekle, supra, the case turned, at least to some extent, on the fact that the vendor had received a large share of the purchase price prior to instituting suit for specific performance, and bought back the property at the sale held pursuant to the decree for less than half of the contract price. Under these circumstances, the recovery of any additional sums was deemed to be "inequitable and more than the [original vendor] could, in a court of equity, in good conscience demand." We have no quarrel with this conclusion.
But so far as we are aware, no such circumstances are present in the case at bar. While the vendor did bid the property in at the master's sale, there is no question raised that the bid was not the highest bid obtainable at a public sale, or that the price paid was not, as a matter of fact, a fair one, or that it gave the vendor an unconscionable profit. In this situation there is no reasonable premise upon which the plaintiffs can be denied the balance due them under the contract and the decree for specific performance. To hold otherwise would amount to allowing the defendants to free themselves from all obligations, under the contract duly made by them to *845 purchase at an agreed price, by their mere act of relinquishing any claim to the property in question. The remedy of specific performance is intended to prevent just such a result. Pomeroy's Equity Jurisprudence (5th ed.) Vol. 4, section 1401, et seq.
It is recognized in this jurisdiction that in a suit by the vendor to require a vendee to pay an agreed purchase price "a sale of the property involved may be ordered for the purpose of enforcing a decree in favor of plaintiff vendor * * * even in the absence of a lien on such property for the purchase price." 81 C.J.S., Specific Performance, § 170, p. 808, citing Standard Lbr. Co. v. Florida Industrial Co., 106 Fla. 884, 141 So. 729. But the fact that we have recognized that such a sale may be ordered does not mean that this is the exclusive method of enforcing the decree for the payment of the purchase price. To the contrary, it is provided by 31 F.S.A., Florida Equity Rule 67 that "Final process to execute any decree may, if the decree be solely for the payment of money, be by writ of execution, * * *" and that "Executions on decrees for money shall issue and be governed by the law relating to executions on judgments." And the general rule is that a court of equity may proceed in the enforcement of a decree of specific performance, "as far as it requires the payment of money, by execution * * * or other similar process." 81 C.J.S., Specific Performance, § 170(d) (1).
So it is that while the rule exists that "in the absence of a rule of court or statute a court of equity has no jurisdiction or power to render a deficiency decree in a suit to enforce a lien securing a liability purely legal" (55 Am.Jur., Vendor & Pur., section 499; Johnson v. McKinnon, 45 Fla. 388, 34 So. 272), that rule should not control the case where the proceeds from the sale of land involved in a specific performance proceeding are insufficient to satisfy the decree, and there results a deficient execution, necessitating a supplemental levy to discharge the amount found to be due and owing by the terms of the final decree.
The rule applicable in suits for specific performance, on the basis of the principles outlined herein, is that a personal decree may be rendered against the purchaser, and if such a decree is not satisfied by the vendee in accordance with its terms a sale of the property may be had, and the proceeds of the sale applied on the sum found by the decree to be due. Although circumstances in any given case may justify the limitation of the scope of relief to be afforded in a specific performance proceeding, Topper v. Alcazar Operating Co., 160 Fla. 421, 35 So.2d 392, and cases cited, the court may, in the exercise of its sound discretion, authorize the collection of the unpaid balance by execution on other leviable assets of the vendee. Insofar as the case of McCaskill v. Dekle, supra, contravenes this rule, it is receded from.
It is apparent that the procedure followed in the court below in the rendition of the confirmation order conforms, in essence, to the rule of procedure herein stated. Accordingly, the petition for certiorari should be denied.
It is so ordered.
ROBERTS, C.J., and TERRELL and MATHEWS, JJ., concur.